IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHLEEN LOPRESTI | : | CIVIL ACTION |
| | : | |
| v. | : | No. 12-6281 |
| | : | |
| COUNTY OF LEHIGH, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                                **May 12, 2014**

Plaintiff Kathleen Lopresti brings this employment discrimination action under Title VII of the Civil Rights Act of 1964 (Title VII) against her former employer, County of Lehigh (the County), and the American Federation of State, County, and Municipal Employees, District Council 88, Local 543, AFL-CIO (AFSCME or the Union). Lopresti alleges the County unlawfully terminated her based solely on her sex and, although the Union filed a grievance on her behalf, it later withdrew the grievance without cause and solely because of her sex. Defendants have each moved for summary judgment.

This is the second time the events giving rise to Lopresti's sex discrimination claims are before this Court on motions for summary judgment. In a separate action initiated on May 23, 2012 (*Lopresti I*), Lopresti brought claims against the same Defendants alleging breach of a collective bargaining agreement (CBA) by the County and breach of the duty of fair representation by AFSCME.[1] On June 6, 2013, this Court entered summary judgment in favor of

---

[1] Lopresti also brought age discrimination claims against both Defendants in *Lopresti I*, but those claims were dismissed on September 19, 2012, when this Court granted Plaintiff's motion for voluntary non-suit. In the instant Complaint, within each count labeled "Sex Discrimination," Lopresti makes certain allegations and references to age discrimination in violation of the Age Discrimination in Employment Act. *See* Compl. ¶¶ 15, 27, 31, 33. Lopresti appears to have abandoned her age discrimination claims (if she ever intended to bring them at all), as she makes no argument regarding these claims and there is no evidence supporting them in the record. In

the Defendants on both claims.  Lopresti did not assert her sex discrimination claims in *Lopresti I* because she had not yet exhausted her administrative remedies.[2]  Having now considered her sex discrimination claims, this Court concludes, for the following reasons, the Defendants are again entitled to judgment as a matter of law, and both motions will be granted.

**FACTS**[3]

Lopresti worked for the County as a Corrections Officer (CO) from 2002 until her termination at an administrative hearing on September 6, 2011.  The County terminated Lopresti as a result of her prior disciplinary history and an incident during her shift on August 18, 2011, the details of which are recounted at length in this Court's *Lopresti I* summary judgment memorandum.  *See Lopresti I*, No. 12-2832, 2013 WL 2449190 (E.D. Pa. June 6, 2013).[4]

---

these circumstances, Lopresti has waived any age discrimination claims she may have had.  *See Brown v. Johnson*, 116 F. App'x 342, 345 (3d Cir. 2004) ("Even an issue raised in the complaint but ignored at summary judgment may be deemed waived. If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." (quoting *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995))).

[2] On January 24, 2012, several months before initiating *Lopresti I*, Lopresti filed a charge of sex discrimination with the EEOC against the County and the Union.  Lopresti received a right-to-sue letter for her claim against the County on September 21, 2012, and requested a letter with regard to the Union on September 27, 2012.  On October 5, 2012, eleven days before summary judgment motions were due in *Lopresti I*, she moved this Court to place the case in civil suspense because she had not received her right-to-sue letter as to the Union.  Defendants opposed the motion, and this Court denied it on October 12, 2012.  Upon receiving her right-to-sue letter for her claim against the Union, Lopresti could have moved to amend her complaint to include the sex discrimination claims; instead, she filed this separate action on November 7, 2012.

[3] In determining whether to grant summary judgment, the court "must view the facts in the light most favorable to the non-moving party, and must make all reasonable inferences in that party's favor."  *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[4] The instant memorandum sets forth only the facts necessary to place her discrimination claims in the appropriate context, and otherwise incorporates by reference the facts set forth in the prior summary judgment memorandum.

At the conclusion of the September 6, 2011, administrative hearing, Director of Corrections Edward Sweeney decided to terminate Lopresti, stating there was "a repeated pattern of [her] being belligerent to other people[,] . . . several repeated prior incidents where [she] ha[d] used words like dumb and stupid towards [her] interaction with inmates."  *Id.* at *2.  The following day, the County issued a formal termination letter explaining Lopresti was being terminated because of her (1) "[f]ailure to comply with the requirements of County policy directives as well as Department of Corrections and/or facility policy directives," and (2) "[c]onduct in violation of Departmental policy relating to 'Contacts with Inmate/Residents and Ex–Offenders,'" County's Mot. for Summ. J. Ex. B-5.  The letter further noted Lopresti's repeated history of volatile, disrespectful behavior toward staff and inmates; her ongoing refusal to accept responsibility for her behavior; and her failure to address self-control problems.  In sum, the County concluded Lopresti's continued employment as a corrections officer posed a threat to herself, other staff, and inmates.[5]

Shortly after the County terminated Lopresti, AFSCME filed a grievance on her behalf regarding her termination, which the County denied three days later.  The County also opposed Lopresti's unemployment compensation claim, and a notice of determination was issued denying

---

[5] At the time she was terminated, Lopresti had three formal disciplinary actions in her personnel file in addition to the August 18, 2011, incident: a June 21, 2006, reprimand for insubordination and for acting in a provocative manner to an inmate during an unclothed search procedure, County's Mot. for Summ. J. Ex. B-7; a December 5, 2008, suspension for using inappropriate, pejorative, and obscene language toward a fellow CO, *id.* Ex. B-9; and an August 4, 2009, suspension for two separate instances of making offensive, racially charged comments to a fellow CO, *id.* Ex. B-13.  The letter regarding her August 4, 2009, suspension stated, among other things, that any future incidents of unprofessional interactions with her coworkers would result in termination.  In addition to these formal disciplinary letters, Lopresti's personnel file contained many notes from supervisors regarding other incidents of unprofessional behavior.  The prison grievance file also contained numerous inmate complaints about Lopresti, alleging she acted in an unprofessional manner by yelling or cursing at inmates, calling inmates names, and directing racial epithets at inmates.

the claim.  After a period of negotiation between the Union and the County, Lopresti agreed to a proposed settlement whereby the County would not oppose Lopresti's appeal from the denial of her unemployment compensation claim in exchange for a withdrawal of the grievance.  The proposed settlement fell through, however, when Lopresti's attorney failed to timely appeal the denial of unemployment benefits.  Lopresti then indicated her desire to proceed to arbitration.  On January 18, 2012, prior to the arbitration hearing, Lopresti's Union representative, Walter Francis, informed her by phone that he was withdrawing the grievance for lack of merit.  Following this phone conversation, Francis sent Lopresti a formal notification that the grievance was being withdrawn.  *See id.* Ex. B-33 (letter stating grievance was withdrawn for lack of merit based on several phone conversations between Francis and Lopresti and "witness statements, video tapes, and other evidence provided by you").

In support of her sex discrimination claims, Lopresti maintains Lehigh County Prison was a difficult work environment for women.  According to Lopresti, male COs treated women working as COs disrespectfully, often subjecting them to harassment.  In 2005, Lopresti testified at the termination hearing of a fellow CO.  She asserts she was blamed by many of her male colleagues for the CO's termination.  Lopresti believes she was the target of a coordinated effort by her male colleagues to get her fired.  She also alleges the Union treated women in a hostile manner and had a history of fighting for men, but not for women.  In support of this argument, Lopresti points to seven male COs for whom the Union pursued grievances and four female COs for whom the Union did not.

**DISCUSSION**

    **A.  Title VII Claim Against the County**

Lehigh County argues as a threshold matter that because Lopresti's sex discrimination claim arises out of the same underlying facts as *Lopresti I*, it is barred by res judicata. Res judicata applies to bar the parties from relitigating issues that were or could have been raised in a prior action if three requirements are met. *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999). There must be: "(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." *Id.*

The first two res judicata prongs are satisfied.[6] As for the third requirement, because there is an "essential similarity of the underlying events giving rise to the various legal claims" in this case and in *Lopresti I*, the two suits are based on the same cause of action. *Churchill*, 183 F.3d at 194. In *Churchill*, the court held a prior action brought under the Family and Medical Leave Act had res judicata effect on a subsequent action asserting discrimination claims under the Americans with Disabilities Act and the Pennsylvania Human Relations Act based on the same underlying facts. In so holding, the court observed a subsequent case is based on the same cause of action when "the underlying events in both cases are the same, the acts complained of were the same, and the evidence at the trial would have been the same." *Id.* at 195. According to the court, "the fact that Churchill advanced different legal theories does not mean that her second action will not be precluded." *Id.* Here, Lopresti's sex discrimination claim, like the contract claim she asserted in *Lopresti I*, involves allegations relating to her termination by the

---

[6] Lopresti contends there was no final judgment on the merits in *Lopresti I* because this Court's summary judgment decision is presently on appeal to the Third Circuit. In support of this argument, she cites *Luben Industries, Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983), but contrary to Lopresti's position, the Court in that case observed that a decision subject to appeal is a factor that does indeed support the conclusion that the decision was final. *See also Banks v. Hayward*, No. 06-1572, 2007 WL 120045, at *4 n.6 (W.D. Pa. Jan. 10, 2007) (collecting cases and authority supporting the proposition that "it has become clear in the federal courts that res judicata ordinarily attaches to a final lower court judgment even though an appeal has been taken and remains undecided").

County and the withdrawal of her grievance by the Union, and the evidence at trial would be largely the same in both cases.   Both suits are therefore based on the same cause of action.

Because the three elements necessary to invoke res judicata are satisfied, Lopresti can only avoid dismissal of her sex discrimination claim if the claim could not have been raised in the prior action.   Lopresti argues this is the case here because she asked this Court to place *Lopresti I* in civil suspense pending issuance of the right-to-sue letter against the Union so that she could file a consolidated complaint including the discrimination claims against both parties, but the Court denied this motion on October 12, 2012.

In *Churchill*, res judicata applied to the second action—even though the plaintiff had not received a right-to-sue letter from the EEOC as to the claims raised in that action—because the plaintiff sat on her rights by failing to request a right-to-sue letter in a timely manner.  *Id.* at 191. The court also observed, however, that the plaintiff could have moved, but did not move, to stay the original action while waiting for the right-to-sue letter, noting "[o]bviously we are not concerned here with a situation in which a court denied a diligent plaintiff's application for a stay in an FMLA action and thus precluded her from asserting her various claims in a single case. In those circumstances we might reach a different result."  *Id.* at 195 n.8.  While questions remain regarding Lopresti's diligence in pursuing the necessary right-to-sue letter and whether she obtained it in a timely manner, this Court will assume, without deciding, that Lopresti would qualify for the exception articulated in *Churchill*.[7]   The Court therefore declines to apply res judicata to bar her sex discrimination claim against the County, and turns now to the merits.

---

[7] Lopresti could have requested the right-to-sue letter as to the County and the Union on July 22, 2012, 180 days after filing the EEOC charges.  *See* 42 U.S.C. § 2000e-5(f)(1).  She could have then sought to amend her *Lopresti I* complaint to include the discrimination claims while that case was still in the discovery phase, or filed a new action and moved to consolidate the cases. Instead of requesting a letter in July, Lopresti waited until the end of September and then filed a

A motion for summary judgment shall be granted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000) (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Because Lopresti has no direct evidence of discrimination by the County, the "*McDonnell Douglas* burden shifting analysis applies to [her] claims of discrimination under Title VII." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).[8] Under this framework, Lopresti bears the initial

---

motion to stay the proceedings on October 5, 2012, after the discovery period had closed and eleven days before dispositive motions were due. Moreover, even though this Court denied her motion to stay the proceedings, the order closing *Lopresti I* was not issued until June 6, 2013. She filed this action on November 7, 2012, and although the date she received the Union's right-to-sue letter is not in the record, it must have been in her possession at that time. Once she was in possession of the right-to-sue letter as to the Union, she could have attempted to consolidate all of her claims in *Lopresti I*, but she did not.

[8] Lopresti contests the application of the *McDonnell Douglas* framework, but not on the basis that she has any direct evidence of discrimination or even that her claim is properly considered under the mixed-motive theory of liability. Instead, she cites to several district court cases outside the Third Circuit holding that after the Supreme Court decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), courts are no longer required to follow the burden-shifting paradigm when considering any Title VII discrimination claim, either mixed-motive or single-motive. *See, e.g.*, *Griffith v. City of Des Moines*, No. 01-10537, 2003 WL 21976027, at *12 (S.D. Iowa July 3, 2003); *Dare v. Wal-Mart Stores, Inc.*, 267 F. Supp. 2d 987, 991 (D. Minn. 2003). This Court declines to reach a similar conclusion.

burden of establishing a prima facie case of discrimination.  *Sarullo*, 352 F.3d at 797 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)).  If she establishes a prima facie case of discrimination, the burden shifts to the County, which must articulate a legitimate nondiscriminatory reason for the adverse action.  *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802).  If the County meets this burden, it has successfully rebutted the presumption of discriminatory action created by the prima facie case and Lopresti must show the articulated reasons were a pretext for discrimination and not the real motivation for the adverse action.  *Id.*

To establish a prima facie case of discrimination under Title VII, Lopresti must demonstrate (1) she is a member of a protected class, (2) she is qualified for her position, (3) she suffered an adverse employment action, and (4) the circumstances surrounding the adverse

---

As an initial matter, the approach advocated by Lopresti was rejected by the Eighth Circuit in *Griffith*.  *See Griffith v. City of Des Moines*, 387 F.3d 733, 735 (8th Cir. 2004) (concluding *Desert Palace* has no impact on prior Eighth Circuit precedents applying *McDonnell Douglas* to summary judgment decisions).  Shortly after deciding *Desert Palace*, moreover, the Supreme Court suggested *McDonnell Douglas* has continued vitality.  *See Raytheon Co. v. Hernandez,* 540 U.S. 44, 49 & n. 3 (2003) (noting, in a case post-*Desert Palace,* the consistent use of the "familiar" *McDonnell Douglas* burden-shifting approach for disparate treatment cases). The Third Circuit has also preserved the distinction between mixed- and single-motive discrimination claims, even after *Desert Palace*.  *See Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (noting "the *McDonnell Douglas* burden-shifting framework does not apply in a mixed-motive case in the way it does in a pretext case").

Lopresti has not asserted a mixed-motive theory of liability, and the evidence in the record shows that this is a pretext (or single-motive) case.  *See* Compl. ¶ 10 (alleging the County, in violation of Title VII, terminated Lopresti "solely based upon her sex"); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004) (stating that "[u]nder the mixed-motive framework, the individual must demonstrate, by either direct or circumstantial evidence, that the employer was motivated to take the adverse employment action by both permissible and forbidden reasons").  Because a mixed-motive claim is not before this Court, Lopresti provides no persuasive reason to depart from the *McDonnell Douglas* framework.  In any event, even if *Desert Palace* did apply, Lopresti's claim would still fall short of the standard necessary to defeat summary judgment.  *See, e.g.*, *McClam-Brown v. Boeing Co.*, 142 F. App'x 75, 77 (3d Cir. 2005) ("We need not resolve appellants' contention that the District Court should have conducted an inquiry under *Desert Palace,* rather than *McDonnell Douglas,* however, because appellants failed to produce sufficient direct *or* circumstantial evidence to cast doubt on Boeing's stated reasons for the challenged employment actions.").

action give rise to an inference of unlawful discrimination. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). The burden of establishing a prima facie case is not meant to be onerous, as its purpose is simply "to eliminate the most obvious, lawful reasons for the defendant's action." *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999). Nonetheless, a plaintiff must present evidence of each element in order to obtain relief. *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3d Cir. 1997).

The first three elements of Lopresti's prima facie case are not disputed. Lopresti has not, however, presented evidence from which a jury could reasonably find the circumstances surrounding her termination give rise to an inference of unlawful discrimination. Lopresti has produced no relevant comparator evidence, nor has she produced any other evidence suggesting that the County treated her less favorably because of her sex. *See Sarullo*, 352 F.3d at 798 (noting "[t]he central focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because of their . . . sex" (citation and internal quotations omitted)).[9]

Instead of producing evidence that any similarly situated males were treated more favorably, Lopresti introduces a number of random anecdotes in an attempt to establish a general atmosphere of discrimination at the prison. For instance, Lopresti claims that six years prior to

---

[9] Lopresti points to the County's termination of Phyllis Hamm in 2005 and asks this Court to infer from it that Lopresti's termination six years later was motivated by discrimination. Aside from Hamm's sex, however, there is no connection whatsoever between the circumstances resulting in Hamm's termination and the circumstances resulting in Lopresti's termination. Any facts related to Hamm are therefore irrelevant to whether Lopresti has made out a prima facie case. That Hamm filed a Title VII suit is also irrelevant, as the suit was not only based on distinct facts, but also resulted in a settlement whereby the County never admitted or conceded any liability or wrongdoing. *See* County's Mot. for Summ. J. Ex. B-41. Nor does Lopresti have any evidence of similarly situated males who were treated more favorably, presumably because the record reflects (in connection with her claim against the Union), that many male COs were fired by the County for disciplinary issues.

her termination she was forced against her will to write an incident report about a male CO, Jesse Eichelbaum, after he threatened to punch her.   Following this report, Eichelbaum was terminated, and other COs blamed Lopresti for his termination.   Lopresti states she became a target of harassment and was ostracized by both her male and female colleagues.   County's Mot. for Summ. J. Ex. D (Lopresti Dep. 150-51, Aug. 24, 2012).[10]   Leaving aside the fact that Lopresti is not pursuing a hostile work environment claim, the incident Lopresti describes is largely irrelevant because it offers no proof that she was harassed because she was a woman. Instead, it appears that if Lopresti was harassed, it was for reporting Eichelbaum, which ultimately resulted in his termination.   Moreover, even if the 2005 Eichelbaum incident and its aftermath evidenced discrimination, the alleged harassment was by fellow COs, and there is nothing to suggest these individuals influenced Sweeney when he decided to terminate Lopresti in 2011, which is the adverse employment action that forms the basis for her claim.   *See Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 286 (3d Cir. 2001) (stating a discrimination claim can be cognizable when "those exhibiting discriminatory animus influenced or participated in the decision to terminate").[11]

---

[10] When asked during her deposition about harassment Lopresti may have experienced, Phyllis Hamm responded "I was not aware of any specific incidents of what she was going through, no." County's Mot. for Summ. J. Ex. I (Hamm Dep. 22, Dec. 3, 2013).   When asked whether she was aware of petitions by male corrections officers to have Plaintiff terminated, Hamm responded, "No, I was not."   *Id.* at 24.

[11] Lopresti testified in her deposition to her belief that in connection with the Eichelbaum incident, "people were trying to get [her] fired."   County's Mot. for Summ. J. Ex. D (Lopresti Dep. 105, Aug. 24, 2012).   Although her theory is far from clear, Lopresti apparently maintains she was forced to write the incident report about Eichelbaum because the County knew the report would cause backlash and harassment.   Then, when Lopresti attempted to defend herself against the harassment she experienced, her actions would create a disciplinary paper trail that the County could rely on to terminate her six years later.   *Id.* at 152.   This Court will not credit Lopresti's theory, which is based on nothing more than pure speculation.   *See Lexington Ins. Co. v. W. Pennsylvania Hosp.*, 423 F.3d 318, 333 (3d Cir. 2005) ("Speculation does not create a

Lopresti also points to isolated remarks made by other male COs, and another female CO's account of a sergeant who mishandled a prison cell search by allowing an inmate to make inappropriate sexual comments.  These instances also fail to create an inference of unlawful discrimination by Sweeney in the decision to terminate Lopresti.  Even assuming the comments were inappropriate and the search mishandled, Lopresti again establishes no connection between this conduct, engaged in by employees who were not involved in the termination process, and the ultimate termination decision by Sweeney.  *See Ezold v. Wolf, Block, Schorr & Solis-Cohen,* 983 F.2d 509, 545 (3d Cir.1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.").

In an effort to create an inference of discrimination with respect to Sweeney's decision to terminate her, Lopresti mischaracterizes testimony Sweeney gave at Lopresti's unemployment compensation hearing.  She argues Sweeney had "no information from any inmate that Plaintiff called anyone 'stupid' on August 18, 2011," and he testified she was not fired for calling inmates stupid but rather it was her "demeanor (female?) that got her fired."  Lopresti Opp'n 8; Lopresti Aff. ¶ 38.  As an initial matter, the sergeant who wrote the August 18, 2011, incident report alleges she heard Lopresti call inmates on the housing unit "stupid."  County's Mot. for Summ. J. Ex. B.1 (August 18, 2011, Incident Report).  Whether an inmate also so reported is irrelevant.  In addition, Sweeney never testified that he did not fire Lopresti for calling inmates stupid; he only disagreed with Lopresti's counsel's assertion that the primary reason he fired her was because she called inmates stupid.  *See* Lopresti Aff. Ex. 4.  When asked about the other reasons for

*genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (quoting *Hedberg v. Indiana Bell Tel. Co., Inc.,* 47 F.3d 928, 932 (7th Cir. 1995))).

11

firing her, he responded: "Her whole demeanor and disposition of how she interacts with the inmate population is inappropriate and it's going to get her and/or others . . . injured. [The August 18, 2011, incident report] is spot on for what her demeanor and disposition has been repeatedly over the eight years or so that she was in our employ." *Id.*

It is unreasonable to infer that the use of the word "demeanor" is code for female when nothing in the record supports this characterization aside from Lopresti's belief.[12]  This is particularly true because Sweeney's statement during the unemployment compensation hearing is entirely consistent with Lopresti's extensive disciplinary record, which documents over a number of years her repeated outbursts and verbal abuse directed toward both her coworkers and inmates.[13]  Taken together, the evidence presented by Lopresti is insufficient to give rise to an

---

[12] Lopresti stated in her deposition that Sweeney was "prejudiced" against her.  County's Mot. for Summ. J. Ex. D (Lopresti Dep. 98, Aug. 24, 2012).  When asked why, she responded "[b]ecause I am a female," but could not answer why he might be prejudiced against her because she is a female.  *Id.* at 99.  Lopresti's testimony is insufficient to suggest Sweeney acted with discriminatory animus.  *See, e.g.*, *Jones*, 198 F.3d at 414 (finding insufficient evidence of pretext to defeat summary judgment when a plaintiff "makes numerous allegations in his affidavit which he predicates on nothing more than his beliefs without having actual knowledge of them").

[13] Later in the unemployment compensation hearing, Sweeney expanded on his prior testimony regarding the reasons for terminating Lopresti by elaborating on her disciplinary history:

> There is a history of having several prior employee offense reports where she had been reprimanded, given a one day suspension and given a five day suspension all with the common theme of being volatile and disrespectful towards other staff as well as inmates. There was also a highly inordinate amount of inmate grievances where they have alleged that she called them demeaning names, racial epithets, and very other derogatory type of communications that were probably five times as many as we have on any other corrections officer in our employment. And she had also had repeated counselings over the course of her career for how she should communicate more effectively with the inmate population.

County's Mot. for Summ. J. Ex. N.  Sweeney did acknowledge that he made the decision to terminate Lopresti at the conclusion of the administrative hearing, although his usual practice was to take a day or two to think about it before making a decision regarding termination.  While Lopresti attributes the immediacy of his decision to bias or prejudice, the only reasonable

inference of unlawful discrimination; therefore, her attempt to state a cause of action against the County is meritless.

Even if, contrary to the evidence in the record, Lopresti managed to set forth a prima facie case, the County has articulated many legitimate reasons for terminating Lopresti.  As described above, Lopresti has a long history of inappropriate behavior and insubordination, and she was ultimately terminated based on her previous discipline problems and the code of conduct violations stemming from the events of August 18, 2011.  *See* County's Mot. for Summ. J. Ex. B-5 (Termination Letter).  The County has therefore carried its burden to "articulate some legitimate, nondiscriminatory reason for the employee's rejection."  *McDonnell Douglas*, 411 U.S. at 802.  Because the County carried its burden, Lopresti can only defeat summary judgment by producing "some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  *Jones*, 198 F.3d at 413.

Although she takes issue with certain details set forth in the August 18, 2011, incident report and disputes the bases for her prior disciplinary infractions, Lopresti has not produced sufficient evidence to refute the County's explanation of why she was terminated.  Nor is there any evidence in the record from which a reasonable factfinder could infer a discriminatory reason motivated her discharge.  At its core, the record "reflect[s] a situation in which the employer should have been able to take adverse employment actions against the employee without fear of being embroiled in an expensive law suit.  While [plaintiff] may quarrel with the

---

inference is that Sweeney had no need to deliberate further because the decision was clear.  In any event, he testified that even in the 80-85% of cases where he decides to take additional time to consider, "at the end the termination is the outcome."  Lopresti Aff. ¶ 10; Lopresti Aff. Ex. 1.

[employer's] conclusions regarding particular controversies, the *bona fides* of its determinations simply cannot be doubted." *Id.* at 414. Accordingly, the Court will enter judgment in favor of the County on Lopresti's Title VII claim against it.

### B. Title VII Claim Against the Union

Lopresti's sex discrimination claim against the Union for withdrawing her grievance regarding her termination is also governed by Title VII. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 668-69 (1987) (finding a union's handling of grievances violated Title VII). To establish a prima facie case in this context, a plaintiff must show (1) a violation of the CBA with respect to the plaintiff; (2) the union permitted the violation to go unaddressed, thereby breaching its duty of fair representation; and (3) some indication that the union's actions were motivated by some discriminatory animus. *See Young v. Local 1201, Firemen & Oilers Union*, No. 07-3576, 2009 WL 3152119, at *4 (E.D. Pa. Sept. 25, 2009), *aff'd,* 419 F. App'x 235 (3d Cir. 2011);[14] *see also Smith v. Del. River Stevedores*, 837 F. Supp. 2d 485, 493 (E.D. Pa. 2011); *Hubbell v. World Kitchen, LLC*, 717 F. Supp. 2d 494, 504 n.5 (W.D. Pa. 2010).

---

[14] While this appears to remain the operative standard in the Third Circuit, this Court has been unable to locate a precedential opinion stating as much. The Court notes, however, that this prima facie case standard has recently been rejected in the Seventh Circuit. *See Green v. Am. Fed'n of Teachers/Ill. Fed'n of Teachers Local 604*, 740 F.3d 1104, 1107 (7th Cir. 2014) (holding a claim against a labor organization under Title VII "does not depend on showing that either the employer or the union violated any state statute or contract" and "[s]uch a requirement cannot properly be added as part of the prima facie case"). *But see also Beachum v. AWISCO N.Y.*, 785 F. Supp. 2d 84, 103 (S.D.N.Y. 2011) ("[W]here a plaintiff claims that a union violated Title VII based on its failure to represent a member, courts in [the Second] Circuit generally incorporate the duty of fair representation as one of the elements of the alleged Title VII violation."), *aff'd sub nom. Beachum v. AWISCO N.Y. Corp.*, 459 F. App'x 58 (2d Cir. 2012). In any event, even if the applicable prima facie standard differs from that set forth above, and requires the plaintiff to raise only an inference of discrimination in the circumstances, Lopresti has still failed to meet her burden to establish a prima facie case.

Lopresti has failed to establish a sex discrimination claim against the Union because, among other reasons, her claim is barred by collateral estoppel. *See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.").[15]   Collateral estoppel applies when "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Id.*   All of these requirements are present in this case.

In *Lopresti I*, this Court entered summary judgment in favor of the Union on Lopresti's breach of the duty of fair representation claim, holding "no reasonable juror could conclude her allegations rise to the level of bad faith, arbitrariness, or discrimination necessary to sustain a breach of duty of fair representation claim, and AFSCME is therefore entitled to summary judgment on this claim." *Lopresti I*, 2013 WL 2449190, at *9.   This holding is fatal to Lopresti's Title VII claim against the Union, as to successfully assert such a claim Lopresti must establish a breach of the duty of fair representation motivated by discriminatory animus. *See Young*, 2009 WL 3152119, at *4; *Coureau v. Granfield*, 942 F. Supp. 2d 315, 320-21 (E.D.N.Y. 2013) ("Having already concluded that Plaintiff's claims for breach of the duty of fair representation fail, a cause of action under Title VII cannot stand"), *aff'd*, No. 13-1760, 2014 WL 751685 (2d

---

[15]   Although AFSCME did not raise collateral estoppel as a defense to Lopresti's sex discrimination claim, the Court is empowered to raise the issue sua sponte. *See Tauro v. A Yet Unnamed Domestic Relations Worker Known as Worker ID $IATT*, 205 F. App'x 924, 925 (3d Cir. 2006).   Even without applying collateral estoppel, Lopresti's claim substantively fails on the first element of the prima facie case because Lopresti has made no attempt to establish a violation of the CBA.

Cir. Feb. 27, 2014).  Whether the Union breached its duty of fair representation and whether it

acted with discriminatory animus[16] were both adjudicated and actually litigated in the prior

action; deciding each issue was necessary to this Court's prior decision to grant summary

judgment; and Lopresti was fully represented and had a full and fair opportunity to litigate these

issues.  Collateral estoppel therefore applies to bar the instant sex discrimination claim against

the Union.

This Court recognizes Lopresti takes issue with its prior conclusion that she failed to

produce sufficient evidence of discrimination to withstand summary judgment on the breach of

duty of fair representation claim.  When denying a motion for reconsideration on this issue, the

Court observed Lopresti's conclusory affidavit was the only record evidence supporting her

theory of discrimination—which was (and remains) that the Union had a history of pursuing

grievances on behalf of men and not women.  *See* Union's Mot. for Summ. J. Ex. I (July 9, 2013,

Order).  Lopresti did not submit any other documentation in support of this theory in *Lopresti I*,

and the Court accordingly found she failed to show the Union acted with discriminatory

animus.[17]  In an attempt to defeat the present motion for summary judgment, Lopresti has

---

[16] In concluding the Union did not breach its duty of fair representation as a matter of law in *Lopresti I*, this Court also considered and rejected—under the Title VII standard—Lopresti's contention that the Union acted with discriminatory animus.  *See Lopresti*, 2013 WL 2449190, at *8 (noting "[t]he standard for discriminatory conduct constituting a breach of duty of fair representation has been analogized to the standard for violation of Title VII of the Civil Rights Act of 1964").

[17] Another court in this district recently reached a similar conclusion.  *See Deans v. Kennedy House, Inc.*, No. 11-7125, 2014 WL 715583 (E.D. Pa. Feb. 25, 2014).  There, the district court considered allegations that a union pursued other employees' grievances more aggressively than plaintiff's grievance. *Id.* at *13.  The plaintiff did not, however, present evidence of the facts underlying the other employees' grievances.  In the absence of such evidence, the court found the plaintiff failed to show he was similarly situated to those employees and the union should have handled their grievances in a similar fashion.  *Id.*  The court concluded that "[a] reasonable

submitted new documents she claims show the Union treated similarly situated males more favorably. *See* Lopresti Aff. ¶¶ 60-64 & Exs. 10-15.   The submission of this new evidence that she previously failed to bring before this Court has no effect, however, on whether the instant claim is barred by collateral estoppel.[18]

Nevertheless, the Court has considered the comparator evidence provided by Lopresti, and finds this evidence is insufficient for a reasonable factfinder to "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause" of the Union's decision to withdraw the grievance. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).[19]   When using comparator evidence to show discriminatory animus, "[t]he plaintiff has the burden of demonstrating that similarly situated persons were treated differently."   *Simpson v.*

---

factfinder thus cannot find, under the circumstances, that the Union's handling of Deans's complaints and grievances was motivated by discriminatory animus." *Id.*

[18] There is no indication that this new evidence was not previously available, as it had been produced to Lopresti during discovery in *Lopresti I*.  In fact, Lopresti argued in connection with her motion for reconsideration in *Lopresti I* that her contentions regarding the Union's alleged policy of treating men more favorably than women were based on "reams of documents" provided by Defendants.  *See Lopresti I*, Mot. for Reconsideration of Order of June 6, 2013, at 8 (ECF 59-1).  There are no new facts in her current opposition to summary judgment, only the same "reams of documents" that were produced in *Lopresti I*.  This belated presentation to the Court does not change the calculus as to whether to apply collateral estoppel.  *Compare, e.g.*, *Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*, 126 F.3d 461, 477 (3d Cir. 1997) ("when significant new facts grow out of a continuing course of conduct the issues in a successive suit may fail to constitute the same 'issue' so as to merit preclusive effect."); *Khandhar v. Elfenbein*, 943 F.2d 244, 249 (2d Cir. 1991) ("If significant new evidence is uncovered subsequent to the proceeding said to result in an estoppel of the present action, then it cannot be found that a party was afforded a full and fair opportunity to present his case in the absence of that evidence.").

[19] The Union has proffered a legitimate reason for withdrawing the grievance—its determination that the grievance had no merit.  Although this Court concludes Lopresti cannot establish a prima facie case against the Union, it will assume that she can for the purposes of analyzing her comparator evidence and determining whether it is sufficient to establish that the Union's proffered reason was a pretext for discrimination.

*Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998). For a person to be "similarly situated," Lopresti must show that the person is similar in "all relevant respects." *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) (citation omitted). With regard to workplace discipline, the relevant factors to consider in determining whether individuals are "similarly situated" include whether "the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish the conduct or their employer's treatment of them." *McCullers v. Napolitano*, 427 F. App'x. 190, 195 (3d Cir. 2011) (citation omitted).

As applied to the Union's decision to pursue grievances, the Court finds Lopresti has not carried her burden to establish that similarly situated males were treated more favorably. Lopresti points to grievances handled by the Union with respect to male COs Kyle Butz, Jeremy Wisneski, Thomas Falk, Todd Kuhns, Daryl Klotz, Kenneth Barretto, and Ronald Hosler. Of those, Walter Francis only represented Klotz, Barretto, and Wisneski.[20] The County terminated

---

[20] Butz, Falk, Kuhns, and Hosler were represented by another AFSCME representative, Justus James, who is no longer employed by the Union. *See* Union's Mot. for Summ. J. Ex. B (Walter Francis Dep. 183, Oct. 16, 2012). James was not deposed, and there is nothing in the record to indicate there was any link between the decisions made by James and the decisions made by Francis. In these circumstances, the Court cannot conclude union members whose grievances' were handled by James were similarly situated to members whose grievances were handled by Francis. *Cf. Opsatnik*, 335 F. App'x at 223 ("Although there can be no per se rule that comparator evidence from employees with different supervisors is irrelevant, we agree that Opsatnik failed to present evidence suggesting a link between the purported comparators and the motivations of the decision-makers who terminated Opsatnik."); *see also Beck v. United Food & Commercial Workers Union, Local 99*, 506 F.3d 874, 885 (9th Cir. 2007) (upholding district court's finding that plaintiff was similarly situated to male employees "who received more favorable treatment from the *same union representatives*" (emphasis added)).

Klotz for neglect of duty while caring for a suicidal inmate, Lopresti Aff. ¶ 63D;[21] Barretto for "unknown reasons," *id.* ¶ 63B;[22] and Wisneski because he was arrested on a charge unrelated to his work as a correctional officer, *id.* ¶ 62A.[23]   As Francis testified, the decision whether to arbitrate a grievance is made on a case-by-case basis, and with respect to all three of these comparators, both the circumstances giving rise to termination and their associated disciplinary histories are dissimilar enough to provide no basis for comparison.   Moreover, Lopresti provided no evidence bearing on Francis's decision-making process and no reason to suggest Francis pursued these grievances because the greivants are male.[24]

---

[21] The County previously terminated Klotz in 2005 for working another job while on sick leave, but Union representative James pursued the grievance and Klotz was reinstated after a 151 day suspension.  While his file does contain past instances of discipline, none of it involved the type of disciplinary issues resulting in Lopresti's termination—verbal abuse, insubordination, and other unprofessional interactions with coworkers and inmates.

[22] Lopresti has provided no documentary evidence or any information whatsoever as to the circumstances resulting in Barretto's termination.

[23] Wisneski was the victim of a home invasion, and when the police investigated the crime they discovered drug paraphernalia in his house.  The County terminated him on the basis of his arrest, but when Francis pursued the grievance the arbitrator sustained it, concluding "the County has no admissible evidence as yet that the officer actually committed that crime."  Lopresti Aff. Ex. 11 (American Arbitration Association Decision and Award 9).

[24] Lopresti also asserts that the Union "failed to grieve" disciplinary action taken against four women, Lugene Callaway, Debbie Hilbert, Maraget Rhyder, and Sherrie Anabui.  Lopresti Aff. ¶ 60.  She has no documentary evidence supporting these assertions aside from her affidavit, and there is evidence in the record showing Lopresti's affidavit mischaracterizes the Union's actions with respect to these women.  The Union submitted three affidavits and supporting documentary evidence showing that it did in fact file a grievance on behalf of each of these women.  *See* Union's Reply Exs. A-C.  Rhyder and Anabui settled when the County agreed not to contest their claims for unemployment compensation in exchange for withdrawing the grievance.  Both settlements were similar to the deal that was offered to, and accepted by, Lopresti prior to her attorney's failure to timely appeal the denial of unemployment compensation benefits.  The Union also filed and pursued grievances for three other women not mentioned by Lopresti, though she received those files in discovery.

19

Also, the Union has provided evidence showing (1) the Union has agreed to settlements for male grievants that are similar or identical to the settlement proposed by the County in Lopresti's case, and (2) the Union has withdrawn and refused to arbitrate grievances by males when it determined the grievance had no merit. *See* Union's Mot. for Summ. J. Ex. C (Francis Aff. and related Exhibits); *Simpson*, 142 F.3d at 646-47 ("[T]o show . . . pretext, [plaintiff] can not pick and choose a person she perceives is a valid comparator who was allegedly treated more favorably, and completely ignore a significant group of comparators who were treated equally or less favorably than she.").

Finally (again assuming Lopresti established a prima facie case), because it is abundantly clear from the record that the County had cause to terminate Lopresti, no reasonable factfinder could conclude the Union's proffered reason for withdrawing the grievance—that it had no merit— was "unworthy of credence." *Fuentes*, 32 F.3d at 765.  Lopresti's argument that Francis was simply wrong in his opinion that the grievance lacked merit is not enough. *Id.* ("To discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.").[25] Accordingly, summary judgment in favor of the Union is appropriate.

No material facts are in genuine dispute as to either of Lopresti's claims, and the County and AFSCME are entitled to judgment on those claims as a matter of law.  Both the County and AFSCME's motions for summary judgment will therefore be granted and judgment on each claim in Lopresti's Complaint will be entered in favor of the County and AFSCME.

---

[25] Lopresti's other arguments regarding the process failures associated with Walter Francis's investigation and his handling of the grievance were previously considered and rejected in *Lopresti I*, in both the summary judgment memorandum and Lopresti's motion for reconsideration.  The Court will not revisit those arguments for a third time.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez

Juan R. Sánchez, J.